IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SCOOTER ROBINSON**                                                           **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO.  1:10cv556-JMR**

**DONNIE SAUCIER, et al.**                                                  **DEFENDANTS**
_____

**MEMORANDUM OPINION**

This matter came before the Court pursuant to a Motion [49] to Dismiss, for Qualified Immunity or in the Alternative for Summary Judgment and a Memorandum [50] in Support thereof filed by Defendants Allison, Smith and Saucier on June 10, 2011. Defendant Miller filed a Joinder on September 19, 2011 adopting the Motion [49] and its supporting Memorandum [50]. On July 5, 2011, the Plaintiff filed a Response [59] in Opposition. On June 19, Defendants filed a Reply [66] to the Plaintiff's Response [59] in Opposition. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that Defendant's Motion for Summary Judgment should be partially granted.  Accordingly, Plaintiff's claims with regard to the conditions of his confinement against Defendants Allison, Smith and Saucier should be dismissed with prejudice.

**STATEMENT OF THE CASE**:

Plaintiff Scooter Robinson filed this *pro se* § 1983 action against Defendants David Allison, Reggie Smith and Donnie Saucier on December 7, 2010. Pet'n. [1]. By written Order filed May 13, 2011, the Court allowed Robinson to add Defendants Paul Fernandez, Matthew Carver and Russell Miller.  Among other allegations, Robinson claims he suffered violations of his constitutional rights

while being detained as a pretrial detainee at the Pearl River County Jail (hereinafter "PRCJ"). On June 10, 2011, Defendants Allison, Saucier, and Smith filed a Motion [49] to Dismiss, for Qualified Immunity or in the Alternative for Summary Judgment and a Memorandum [50] in Support thereof. Defendant Miller filed a Joinder on September 19, 2011 adopting the Motion [49} and its supporting Memorandum [50].

## FACTS:

On December 26, 2008, a Picayune, Mississippi police officer attempted to stop a vehicle diven by the Robinson. Robinson initially pulled his car to the side of the roadway and came to stop. However, as the officer approached Robinson's car, Robinson fled the scene and successfully evaded arrest. Eventually, on January 11, 2009, Robinson was captured by the Pearl River county Sheriff's Department. Shortly after his arrest, Robinson was taken to a Picauyne hospital for treatment of a shoulder injury. On January 12, 2011, while at the hospital, he escaped custody and fled.

Defendant Fernandez spotted a vehicle matching the description of the one used by Robinson in escaping from the hospital and began pursuit. Similar to his initial evasion of arrest, Robinson pulled the car to the side of the roadway, waited for the officer to approach the vehicle and sped off initiating another flight from police. Defendant Fernandez pursued Robinson for approximately five miles until Robinson arrived at a roadblock constructed specifically for the capture and arrest of Robinson. Arriving at the roadblock, officers began to fire rounds into the engine of Robinson's vehicle. Robinson then slowed his vehicle, at which point Defendant Saucier approached the vehicle. Defendant Saucier reached though the window of Robinson's car in an effort to stop the vehicle. Despite his efforts, Robinson continued to flee the scene, dragging the officer, and at some point Defendant Saucier fired a round into the Robinson's leg. The officer having fallen from the vehicle, Robinson sped through the roadblock and Defendant Fernandez again initiated pursuit. Quickly,

Defendant Fernandez struck Robinson's vehicle with his patrol car and both vehicles came to a stop. Robinson was arrested and detained in the PRCJ, eventually being charged with two counts by a grand jury.

It is the actions of the officers at the roadblock and the conditions of his subsequent confinement that constitute the claims in Robinson's Complaint [1]. At issue before the Court at this time are Robinson's claims against Defendants Saucier, Allison and Smith (hereinafter "Defendants") with regard to his pretrial confinement at the PRCJ. Plaintiff's allegations consist of two claims stemming from his time unit B-3 of the PRCJ: a failure to provide adequate lighting and failure to give plaintiff yard call.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d

839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985). It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's

deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## ANALYSIS:

As a pretrial detainee, Robinson's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[1] or an

---

[1] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of

"episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

Robinson does not distinguish between any official or individual capacity claims. As this Court must interpret Anderson's *pro se* complaint liberally, the claims will be analyzed as both individual and official capacity claims.

## A. Official Capacity Claims

Robinson's alleges that the Defendants are officially liable because they caused the allegedly unconstitutional conditions at the JCADC. The Court notes that Robinson's official capacity claims against the Defendants are, in reality, claims against the office in which he occupied at the time of the alleged incident and, ultimately, Pearl River County. Therefore, to the extent Robinson brings this action against these Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the Pearl River County had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects Pearl River County's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

---

refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

The great majority of Robinson's Complaint is dedicated to challenging the constitutionality of his conditions of confinement at the PRCJ. However, other than a conclusory claim that his mental injuries were caused by an "inadequate and/or ineffective practice or custom" at the PRCJ, Robinson presents no evidence that an official policy of the PRCJ was responsible for the alleged violation of his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Robinson's allegations could amount to isolated instances of negligent conduct, which are insufficient to support any official capacity claims against the Defendants. Accordingly, the Defendants are entitled to summary judgment on Robinson's official capacity claims as they relate to the conditions of the PRCJ.

### B. Individual Capacity Claims

Additionally, Robinson's Complaint seeks to impose liability against Defendants Saucier, Allison and Smith in their individual capacities for the allegedly unconstitutional conditions at the PRCJ. However, because Defendants are law enforcement officials, they may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Robinson has a constitutional right not to be punished for the crimes with which he has been charged. Therefore, to the extent that Robinson seeks to establish § 1983 liability against these Defendants, he must offer proof that the conditions at the PRCJ were imposed as a form of punishment and not *de minimis*. *See Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be

inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at 539.

First, the Court turns to Robinson's allegations that the Defendant's failed to provide adequate lighting in violation of his constitutional rights. Robinson claims that during his seventy-eight day stay in cell unit B-3, he was deprived of light for approximately sixty days.[2] Resp. [59] 8. As Defendants knew that he had recently been shot in the leg by Defendant Saucier, Robinson claims allowing him to stay in a cell block without lights for an extended period of time was unreasonable and deliberately indifferent to his psychological, medical and rehabilitation needs. *Id*. at 11. Robinson does not claim that Defendants caused the lights to be in disrepair, rather he points to their failure to move him as a result of the inadequate lighting. This claim is consistent with the affidavits of Defendants Allison and Smith stating that the light fixtures were inoperative because inmates regularly vandalized by inmates. Ex. E, F Attach Mot'n. [49-2,3]. Further, though Robinson claims he was moved out of the medical unit to B-3 because of his requests to be transferred from the PRCJ, he never specifically claims that he was kept in B-3 for a retaliatory purpose. He does, however, make a conclusory claim that the Defendants harbored "alternative motives" for keeping him in Unit B-3.

As Robinson puts forth no direct evidence that he was withheld proper lighting for a punitive purpose, he must show that these actions were not reasonably related to a legitimate governmental objective. In other words, he must show that they were arbitrary or purposeless. Defendants claim that Robinson was kept in B-3, a lock down zone, because he was an escape risk and also for his own protection. Ex. E, F Attach Mot'n. [49-2,3] The only rebuttal Robinson offers is that the length of time he was kept in B-3, seventy-eight days, proves that the Defendants' stated purpose is fraudulent.

---

[2] Robinson repeatedly claims that he was deprived for a total of forty-two days however, as this Court is obliged to view *pro se* § 1983 complaints liberally, the Court will address this claim using the larger figure of sixty days. *See* Resp. [59] 8-10.

Resp. [59] 10. Such a conclusory allegation is not enough to show that the actions of the Defendants in leaving Robinson in lockdown were arbitrary rather than for the stated purpose-because he was a flight risk.

Additionally, the Constitution "is not concerned with a *de minimis* level of imposition on pretrial detainees." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th cir. 2004). The imposition upon Robinson as a result of his confinement was *de minimis*; the fact that Robinson had to endure a period of approximately sixty-days in a lockdown unit without consistent lighting due to the misbehavior of other inmates does not rise to the level of constitutional concern. As a legitimate purpose existed for keeping Robinson in unit B-3, and that choice resulted in only a *de minimis* imposition on him, this claim should be denied.

In his next claim, Robinson alleges that Defendants failed to give him yard-call for a period of three months amounting to a "deliberate indifference to an unreasonable risk of serious harm." Mem. In Support [2] 5-6. Robinson accompanies this claim with no facts in support; the only relevant fact in his complaint and supporting memorandum is that he was denied yard-call for four months while in unit B-3. Though prisoners do not enjoy an absolute right to outdoor exercise, courts have recognized that evidence of confinement for long periods of time without any exercise or "the absence of outdoor exercise opportunities" can support a constitutional violation. *Maze v. Hargett*, 200 F.3d 814, 1999 WL 1093469 *3 (5th Cir. 1999)(citing *Green v. Ferrel*, 801 F.2d 765, 771-72 (5th Cir. 1986).

In his complaint, Robinson does not claim that he was deprived outdoor yard-call for a punitive purpose or that the deprivation was unrelated to a legitimate governmental purpose. As a result, there is no issue before the court as to whether Robinson has suffered a constitutional wrong. Accordingly, this claim is denied. *See Jackson v. Cain*, 2009 WL 565718 * 3 (E.D. La. 2009).

**Conclusion**

Based on the preceding analysis, this Court is of the opinion that Plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his official and individual capacity section 1983 claims against Defendants Allison, Smith and Saucier for his claims relating to the conditions of his confinement.  Therefore, this Court finds the Defendant's Motion [49] for Summary Judgment should be granted in part, and that all conditions of confinement claims against Defendants Allison, smith and Saucier should be dismissed with prejudice.

**SO ORDERED** this the ___9th___ day of November, 2011.

_____s/ John M. Roper, Sr._____
CHIEF UNITED STATES MAGISTRATE JUDGE