IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SCOOTER LYNN ROBINSON                                                                PLAINTIFF

VS.                                                          CIVIL ACTION NO. 1:10cv556-HSO-JMR

DONNIE SAUCIER; PAUL FERNANDEZ;
MATTHEW CARVER; and RUSSELL MILLER                                      DEFENDANTS

CONSOLIDATED WITH

SCOOTER LYNN ROBINSON                                                                PLAINTIFF

VS.                                                          CIVIL ACTION NO. 1:11cv245-HSO-JMR

JOHN DOE, EMPLOYEES FOR PEARL RIVER
COUNTY ALSO KNOWN AS PRESIDENT OF
THE BOARD OF SUPERVISORS FOR PEARL
RIVER COUNTY AND ITS EMPLOYEES;
JULIE FLOWERS, INDIVIDUALLY AND IN
OFFICIAL CAPACITY; JOE GARCIA,
INDIVIDUALLY AND IN OFFICIAL CAPACITY;
MIKE JOHNSON, INDIVIDUALLY AND IN
OFFICIAL CAPACITY; SHERMAN GASPAR,
INDIVIDUALLY AND IN OFFICIAL CAPACITY;
RETA LUMPKIN, INDIVIDUALLY AND IN
OFFICIAL CAPACITY; ROB WILLIAMS,
INDIVIDUALLY AND IN OFFICIAL CAPACITY;
DONNIE SAUCIER, INDIVIDUALLY AND IN
OFFICIAL CAPACITY; PEARL RIVER COUNTY;
ANTHONY HALES, PRESIDENT OF THE BOARD
OF SUPERVISORS FOR PEARL RIVER COUNTY                                  DEFENDANTS

## REPORT AND RECOMMENDATION

This cause comes before the Court on motion of the defendants, Donnie Saucier[1], Reggie

Smith, Sheriff David Allison, Julie Flowers, Joe Garcia, Mike Johnson, Sherman Gaspar, Robin

Williams, Anthony Hales, as President of Pearl River County Board of Supervisors, and Pearl

---

[1]Donnie Saucier, Reggie Smith and David Allison, sued in their individual and official capacities, were dismissed with prejudice from this suit relating to any claims regarding conditions of confinement. [144] Any claims of excessive force against these defendants remain pending.

River County, to lift stay [149] and dismiss all claims. Also pending before the Court is the Summary Judgment motion [153] filed by Paul Fernandez based on qualified immunity and *Heck*[2]; Russell Miller's Joinder [97] in Motion for Summary Judgment filed by Allison, Saucier and Smith; Matthew Carver's Joinder in Fernandez's [118] Summary Judgment Motion filed prior to stay and several motions [162, 163, 166, 167] filed by Scooter Robinson [Robinson] for copies of all electronically filed materials. Robinson also filed a motion seeking medical records [169] and a motion for summary judgment [170] advanced against Fernandez.

On January 17, 2009, Robinson was an escaped inmate fleeing from law enforcement [154-1, p. 18.] Fernandez spotted a car matching the description of Robinson's vehicle used in his escape. Fernandez followed Robinson and they pulled over, but when Fernandez got out of the patrol car, Robinson drove away. A chase ensued, which ended at a roadblock set to end Robinson's escape. [154-1, p. 21.] The police fired shots into the engine of Robinson's car trying to end the chase. Donnie Saucier reached into Robinson's car telling Robinson to "stop". Robinson drove off, then stopped, appearing to surrender. Saucier approached the car again and leaned inside, when Robinson began to drive away, pulling Saucier with him. Saucier stated he felt he was being dragged by the car, so he reached for his weapon and fired one shot. [49-1.] At the roadblock, several shots were fired, however it is unclear who fired the shots. [57-1, p. 12 SEALED.] Then Robinson drove through the roadblock and sped off. (*Id*., p. 13.)

Fernandez pursued Robinson, using his patrol car to ram Robinson's vehicle. The car spun around, and Robinson put his hands outside the car to show he surrendered. [154-1, p. 22.] When Robinson was removed from the vehicle, he stated he had been shot. [57-1, p. 16.] Fernandez did not shoot at Robinson. Robinson contends that Fernandez used "excessive force" when he slammed into Robinson's car, spinning the car around. [154, p. 6.]

---

[2]*Heck v. Humphrey*, 512 U.S. 477 (1994).

During his incarceration after this incident, Robinson contends that while he was housed in Zone B-3, the lights in the cell did not work and he was denied yard call. [50, p. 4.] The Defendants maintain that light bulbs in Zone B-3 were repeatedly broken out by the inmates. [57-3 SEALED.] Light bulbs were replaced frequently. (*Id.*)

According to the defendants, the 2010 case was stayed[3] pursuant to *Heck* pending culmination of pending criminal charges against Robinson. [149, p. 2.] Robinson was charged with Aggravated Assault on a Peace Officer and Failure to Stop Motor Vehicle. [*Id.*, p. 3; 152-1.] Robinson filed a second case in 2011, adding new assertions and several new defendants. [*Id.*]

The criminal trial against Robinson was concluded and Robinson was convicted of both charges and sentenced to life in prison. [149-1; 154-5, p. pp. 1-2.] Based on this conviction, the defendants seek dismissal of all excessive force claims brought under 42 U.S.C. § 1983 in this case. [149, p. 4.] The defendants also seek dismissal of any condition of confinement claims which relate to his incarceration at the Pearl River County Jail as advanced against Flowers, Garcia, Johnson, Gaspar, Williams, Saucier, Hales and Pearl River County. [*Id.*, pp. 4-5.] Those claims were dismissed in an earlier order against Allison, Saucier and Smith. [144.] The defendants further seek dismissal of any claims advanced in the 2011 lawsuit.

According to Fernandez, he is entitled to qualified immunity for any claim for monetary damages brought against him in his individual capacity, as a Highway Patrol Officer for the State of Mississippi. [154, p. 7.] Fernandez argues that the use of force in the circumstances surrounding the chase and arrest of Robinson was reasonable. [154, pp. 8-11.] Fernandez contends that Robinson committed two felonies while fleeing that day, including endangering the life of a police officer. [75, p. 12.] Fernandez asserts that Robinson's flight created a danger

---
[3]The stay was lifted in this case on January 2, 2013.

to the public and police officers, especially when Robinson "pretended" to surrender then sped away when the officer got out of his vehicle. (*Id.*) Robinson suffered minimal, if any, injury when Fernandez hit his car, according to Fernandez. [154, p. 13.] Robinson states that he was "knocked back inside his car" and suffered "mental injuries such as anxiety, paranoia attacks and having flash backs." [1, p. 6.]

Fernandez also contends that Robinson's excessive force claim should be stayed under *Heck*. [154, p. 15.] According to Fernandez, Robinson was tried and convicted of failure to stop a motor vehicle which includes proof of the element that Robinson "willfully, unlawfully and feloniously, while operating a motor vehicle in such a manner as to indicate a reckless or wilful disregard for the safety of person or property, fail to stop." [154-6, 154-7, p. 1.] He was also convicted of aggravated assault on a peace officer, which includes the element that Robinson attempted to cause serious bodily injury to Saucier during the arrest. [154-6, 154-7, p. 2.]

Miller asserts that he is entitled to qualified immunity because Robinson cannot prove that Pearl River County has a policy which permits the use of excessive force or mandates that inmates be housed in cell with inadequate lighting. [97, p. 2.] Miller maintains that Robinson's only assertion against him was that he was present at the scene of the road block when Robinson was taken back into custody after his escape. [97, p. 4.] Miller argues that Robinson cannot show that Miller used any force during the incident, excessive or otherwise. (*Id.*, p. 5.) Finally, Miller indicates that any claims which may be alleged under state law are barred by the provisions of the Mississippi Tort Claims Act, § 11-46-1. (*Id.*)

Allison[4] has averred that he was not personally involved in the pursuit or recapture of Robinson following his escape from the Pearl River County Jail. [49-3.]

---

[4]Without any personal involvement in the incident surrounding Robinson's claim of the use of excessive force, Allison cannot be held liable for any alleged damages advanced in this claim. The Court recommends that any claim of excessive force advanced against Allison be dismissed.

Carver asserts that he is entitled to qualified immunity and that the excessive force claim is barred by *Heck*. [117, p. 2.] He was named as an officer who was involved in the road block and arrest of Robinson on January 17, 2009. [40, p. 5.]

Robinson contends that the *Heck* bar does not apply in this case because there was excessive force used before the alleged aggravated assault. [152, p. 2.] Russell Miller allegedly acted unreasonably in setting up a roadblock in a residential area. [103, p. 1.]

Discussion

The United States Supreme Court has held that where the success in a prisoner's § 1983 damages action would implicitly question the validity of their conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence. *See Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, when a state prisoner brings a 1983 suit based on his conviction, the Court must first determine if a judgment in favor of the plaintiff in the § 1983 action would imply that the conviction or sentence was invalid. *Heck*, 512 U.S. at 486. If so, the plaintiff must show that his conviction was reversed on direct appeal, expunged by executive order, invalidated by other state means, or called into question by the issuance of a federal *habeas* writ. *Heck*, 512 U.S. at 486-7; *Penley v. Collin County, Tex.*, 446 F.3d 572, 573 (5th Cir. 2006), *cert. denied* 549 U.S. 883 (2006).

Excessive force claims are subject to dismissal if the plaintiff is convicted of assaulting the police officer during the arrest. *See Buckenberger v. Reed*, 342 Fed. Appx. 58, 64 (5th Cir. 2009). Because an essential element of Robinson's claim in this case is that excessive force was used in his arrest, granting relief on his claim would necessarily imply the invalidity of Plaintiff's convictions. *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999). The Fifth Circuit has found that *Heck* barred § 1983 excessive force claims where the plaintiff's previous conviction

was for resisting arrest or for aggravated assault or battery against the arresting officer. *See, e.g., Hudson v. Hughes,* 98 F.3d 868, 872 (5th Cir. 1996); *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000), *cert. denied* 531 U.S. 959.

In addition, Robinson has not demonstrated that his convictions or sentences were reversed, invalidated, or expunged by his *habeas* petition prior to bringing this suit under § 1983. *See Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir. 1996). Accordingly, because all of Robinson's excessive force claims are barred by *Heck,* the Court recommends that those claims should be dismissed with prejudice against all defendants.

II. Conditions of Confinement

According to Robinson, he was not provided adequate shelter when housed in unit B-3 of the Pearl River County Jail. [2, pp. 4-5.] He asserts that he was not provided sufficient light to allow him to read in his cell. (*Id*.) He contends that the lights went out in the cells in unit B-3 on February 12, 2009, and despite his request to be moved, no action was taken aside from plates being removed from the outside windows in the unit. [1:11cv245; 1, p. 11.] Robinson asserts that he complained about the situation to Flowers, and about a week later, the lights were repaired. (*Id*., p. 13.) He was not provided "yard call" for a period of three months, which Robinson contends amounts to deliberate indifference after he was shot, hospitalized and put in a lockdown cell. (*Id*., pp. 5-6.) He sued Julie Flowers, Rob Williams, Joe Garcia, Mike Johnson, Sherman Gaspar, Anthony Hales, President of Pearl River County Board of Supervisors and Pearl River County. [1:11cv245, 1, p. 1.]

Flowers was the Jail Administrator during the time of Robinson's incarceration and she avers that Robinson was place in Zone B-3 because he was considered an escape risk. [49-4, p. 1.] She also included a copy of work orders and discipline forms related to repair to the lights in that area due to inmate's behavior. [57-3 SEALED.] Robinson contends that any lack of lights in

the cell block "deprived him of a basic human need."

Plaintiff alleges that the Defendants are officially liable because they failed to remedy the allegedly unconstitutional conditions at the Pearl River County Jail. The Court notes that Plaintiff's official capacity claims against the Defendants are, in reality, claims against the office in which they occupied at the time of the alleged incident and, ultimately, Pearl River County. Robinson has not proven the existence of a policy or custom which was the moving force behind any alleged constitutional violation.

Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001), *cert. denied* 534 U.S. 820; *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Robinson has not identified an official policy concerning his claims of inadequate shelter. As a result and as outlined further below, the Court recommends that any claims against Pearl River County should be dismissed for failure to state a claim.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. "The unconstitutional conduct [alleged by the plaintiff] must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id*. at 578;

*See Bennet v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984), *cert. denied* 472 U.S. 1016 (1985).

Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Id.* at 578. Not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F. Supp. 2d 366, 376 (S.D. Miss. 1999); *see Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), *cert. dismissed* 526 U.S. 1083 (1999); *Piotrowski*, 237 F.3d at 580.

Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *See Monell,* 436 U.S. at 694. In this case, Robinson does not outline how any of the Board of Supervisor defendants were connected to the allegations in his complaint. The Court, therefore, recommends that Rob Williams, Joe Garcia, Mike Johnson, Sherman Gaspar, and Anthony Hales, President of Pearl River County Board of Supervisors be dismissed with prejudice from the suit for failure to show their personal involvement in the lawsuit.

Inadequate lighting, under certain circumstances, can be sufficiently serious to establish an eighth amendment violation. *See Gates v. Cook,* 376 F.3d 323, 341-2 (5th Cir. 2004). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim, and "routine discomfort inherent in the prison setting" does not rise to the level of a

constitutional violation. *See e.g. Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989), *cert. denied* 493 U.S. 969. Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). The lighting situation at the jail was rectified as soon as officials became aware of the situation, although inmates were breaking the light fixtures, thereby causing the outages. There is no evidence that any defendant was personally responsible for the outages. The Court, therefore, finds no basis for relief in connection with Robinson's claims regarding inadequate lighting at the jail facility.

Robinson has failed to establish any constitutional violation related to his outdoor exercise opportunities. First, he admittedly was restricted in his outdoor exercise because he was in lockdown following his attempt to escape. [59, p. 9.] Maintenance of prison discipline and security is a legitimate function of prison officials, who must be accorded broad discretion in that function. *See Waganfeald v. Gusman,* 674 F.3d 475, 485 (5th Cir. 2012), *cert. denied,* 133 S.Ct. 328 (citing *Whitley v. Albers,* 475 U.S. 312, 322 (1986); *Bell v. Wolfish,* 441 U.S. 520, 546, 547 (1979)) ("[S]ecurity considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.") (quotation omitted).

Robinson has not presented any evidence that the restriction on his outdoor exercise caused any serious health hazard. Furthermore, Robinson has not established that the restriction on his outdoors recreation for legitimate disciplinary and security reasons caused any physical injury or violation of his constitutional rights of any kind as a result of his alleged lack of outdoor exercise. *Hernandez v. Velasquez,* 522 F.3d 556, 561 (5th Cir. 2008); *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986). Robinson fails to allege the existence of an official policy causing any of the alleged violations of his constitutional rights. The Court recommends that any claims

brought in connection with inadequate lighting and failure to provide a "yard call" be dismissed against all defendants.

III. Excessive Force

Even if Robinson's excessive force claims were not barred under *Heck*, the claims would fail for other reasons. A claim brought under § 1983 for excessive force requires Robinson to prove that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004.) "Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003). In addition, Robinson's § 1983 suit is barred by *Heck* if proof that the use of force was objectively unreasonable would call into question the validity of Robinson's conviction for simple assault on a law enforcement officer. *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006).

Robinson's conviction for simple assault on a law enforcement officer required proof that Robinson "attempted to cause or purposely, knowingly or recklessly cause bodily injury" or "put another in fear of imminent serious bodily harm." MISS. CODE ANN. § 97-3-7. Excessive force is not unreasonable when an officer "would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace*, 333 F.3d at 624. Because Robinson's criminal conviction was premised on Robinson's attempt to cause or putting another in fear of, serious bodily injury, the Court concludes that the officers acted reasonably under the circumstances both under Mississippi and federal law. The Court further recommends that any claims of excessive force brought against Donnie Saucier, David Allison, Reggie Smith, Paul Fernandez, Matthew Carver, and Russell Miller be dismissed.

IV. State Law Claims

Any state law claims against the defendants brought in either their individual or official capacities are barred by provisions of the Mississippi Tort Claims Act. The Defendants argue that MISS. CODE ANN. § 11-46-9(1)(m) (1972), a governmental entity is not liable for any claim brought by an individual who, at the time the claim arises, is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution. The Court agrees with the Defendants and finds that any claims Robinson raises under Mississippi state law against these defendants during the relevant time period are barred by provisions of the Mississippi Tort Claims Act. *Wallace v. Town of Raleigh*, 815 So.2d 1203, 1207–8 (Miss. 2002).

Finally, the Court recommends that any outstanding motions filed by Robinson, including several motions [162, 163, 166, 167] for copies of all electronically filed materials be denied. The Court further recommends that Robinson's motion seeking medical records [169] and motion for summary judgment [170] advanced against Fernandez should also be denied.

## **CONCLUSION**

The Court recommends that Robinson's claims should be dismissed pursuant to *Heck* for failing to first achieve favorable termination of his available state or federal *habeas* opportunities challenging his underlying conviction. Alternatively, if his claims were analyzed under 42 U.S.C. § 1983 jurisprudence, this Court is of the opinion that Robinson fails to meet his burden of establishing a claim against Donnie Saucier, David Allison, Reggie Smith, Paul Fernandez, Matthew Carver, Russell Miller, Julie Flowers, Rob Williams, Joe Garcia, Mike Johnson, Sherman Gaspar, Anthony Hales, President of Pearl River County Board of Supervisors and Pearl River County, and the Court recommends that any claims against these defendants should be dismissed with prejudice, both in their individual and official capacities. The Court further recommends that any state law claims advanced by Robinson in connection with the facts of these cases should be dismissed. Finally, the Court recommends that any outstanding motions

filed by Robinson, including several motions [162, 163, 166, 167] for copies of all electronically filed materials, seeking medical records [169] and a motion for summary judgment [170] advanced against Fernandez be denied.

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, or by no later than February 11, 2013, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–9 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

This the 28th day of January, 2013.

s/John M. Roper  
CHIEF UNITED STATES MAGISTRATE JUDGE